IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

RUSSELL E. APPENZELLER,      )      CASE NO. 1:10CV0013
                             )
              Petitioner,    )
                             )      JUDGE ZOUHARY
       v.                    )
                             )      MAGISTRATE JUDGE VECCHIARELLI
MICHELLE MILLER, Warden,     )
                             )      **REPORT AND RECOMMENDATION**
              Respondent.    )

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2). Before the court is the petition of Russell E. Appenzeller ("Appenzeller") for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 on January 4, 2010.  Appenzeller is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case of *State of Ohio vs. Appenzeller*, Case No. 06CR00010B (Lake County 2006).  For the reasons set forth below, Appenzeller's petition should be dismissed.

I.

The state appellate court reviewing Appenzeller's conviction found the following facts to be relevant to his case:

{¶ 2} In 2005, Julie Middlebrook worked at the Towne Motel, which is located between Mentor and Painesville, Ohio on Route 20. Middlebrook's duties included working at the front desk and checking people into and out of motel

rooms.  In January or February 2005, an individual checked into a motel room under the name Russell Edwards.  In court, Middlebrook identified this individual as Appenzeller.  Middlebrook testified that on two or three occasions, Appenzeller approached her with a black garbage bag containing his belongings. He asked Middlebrook to hold the bag for a few hours.  Then, Appenzeller would return later in the day and pay for an additional night at the motel.  Finally, on the last occasion, Appenzeller paid for an entire week.  Middlebrook testified that Appenzeller did not have a car and that he would take the Laketran bus when he left the motel.

{¶ 3} On February 1, 2005, John Mackainch returned to his apartment at 7205 Mentor Avenue after working that day.  Mackainch noticed that the door to his apartment had been pried open.  Mackainch discovered that about $20 of loose change was missing from his dresser.  In addition, he noticed he was missing a few video games and "a couple of packs of cigarettes."

{¶ 4} On February 2, 2005, when Gayle Swaine returned to her apartment after work, she discovered that her apartment door was hard to open.  Swaine lived with her boyfriend, Kevin Masterson, in an apartment at 7970 Mentor Avenue. Earlier that day, Masterson came home from work for lunch and noticed that the apartment was messy, but did not think anything was wrong at that time.  When Swaine arrived home, she found her fireproof lock box opened on the bed of her spare bedroom.  Swaine testified that four rings and two bracelets were missing from her bedroom.  She testified that the value of the missing jewelry totaled $3,800. Patrolman John Stirewalt of the Mentor Police Department investigated the break-in at Swaine's residence.  He testified that a screwdriver was lying on the bed next to the lockbox.

{¶ 5} Lauri Casselman also lived in an apartment located at 7970 Mentor Avenue. On February 2, 2005, she discovered that her apartment had been broken into. In her bedroom, she found her metal lockbox, which had been pried open. Casselman testified that she was missing $60 and her mother's wedding ring.

{¶ 6} Shawn Hart lived in the same apartment building as Casselman, in an apartment unit upstairs from Casselman's.  Hart returned to his apartment for lunch on February 2, 2005.  As he was walking towards his apartment, he noticed a man leaving Casselman's apartment carrying a medium-sized box. The individual looked at Hart and asked him how he had been.  Hart testified that the man walked toward Route 20 upon leaving Casselman's apartment.  While Hart thought the situation was strange, he did not contact the police at that time. Later that day, Hart returned home from work and observed police officers outside Casselman's apartment.  At that time, he informed the officers about his earlier observations.  A few months later, the police presented Hart with a photo line-up.  Hart identified the third individual in the photo line-up, Appenzeller, as the person he saw leaving Casselman's apartment.  In addition, during his

2

in-court testimony, Hart positively identified Appenzeller as the individual he witnessed carrying the box from Casselman's apartment.

{¶ 7} On February 9, 2005, Wesley Schubert returned to his apartment at 7950 Mentor Avenue.  He discovered that his door had been pried open.  Once inside his apartment, Schubert noticed that approximately $40 in change and two credit cards were missing.

{¶ 8} In February 2005, Timothy Bowers was the manager at a Giant Eagle grocery store in Mentor, Ohio.  Bowers testified that the Giant Eagle has a Coinstar machine.  This machine converts loose change into paper currency for a fee.  After the coins are deposited into the machine, the machine prints a receipt that can be redeemed at the store's customer service window.  On February 9, 2005, a Coinstar transaction occurred at 12:17 p.m.  $61.31 in coins was exchanged for $55.90 in currency.  The store's surveillance camera recorded an individual redeeming the receipt in question on February 9, 2005.  This videotape was admitted as an exhibit at trial and was played for the jury.  Sergeant Ken Gunsch of the Mentor Police Department testified that the individual in the videotape was Appenzeller.

{¶ 9} On February 23, 2005, at approximately 1:00 p.m., the Mentor Police Department received a call from a woman who stated a man was breaking into apartments in the Terrace Apartment complex located on Center Street.  Patrolman Mike Murton was dispatched to the scene.  Patrolman Murton looked around the apartment complex, but was unable to locate the suspect.  Patrolman Murton discovered that five apartments showed signs of being broken into.

{¶ 10} Sheldon Hess lived at 7433 Center Street, Apartment 110, in Mentor, Ohio.  On February 23, 2005, he received a call from the police indicating that his apartment had been broken into.  Hess returned to his apartment and did not immediately notice anything missing.  However, upon further inspection, Hess discovered that approximately $8 in coins and a credit card were missing.

{¶ 11} Patricia Zeiger lived in Apartment 111 at 7344 Center Street in Mentor, Ohio.  On February 23, 2005, someone met her in the parking lot when she arrived home from work and told her that her apartment had been broken into.  Zeiger discovered that she was missing $8 in quarters that she had set out to do laundry.

{¶ 12} Lisa Wilson lived at 7433 Center Street, Apartment 104, in Mentor, Ohio.  On February 23, 2005, Wilson received a call from a police officer informing her that someone had broken into her apartment.  Nothing was missing from Wilson's apartment.

{¶ 13} Lori Wolf lived in Apartment 108 at 7433 Center Street in Mentor, Ohio.

3

On February 23, 2005, a police officer called Wolf and asked her to come to her apartment because there was a break-in. Wolf left work and returned to her apartment.  Upon inspecting her apartment, Wolf discovered that nothing was missing.

{¶ 14} James Wheeler was in the Lake County jail in April 2005.  During that time, Appenzeller was also incarcerated in the Lake County jail.  Wheeler testified that he had several conversations with Appenzeller.  According to Wheeler, Appenzeller told him he was from the Youngstown area and that he was in Lake County to attend a treatment program at a facility called Teen Challenge. Wheeler testified that Appenzeller did not care for the program, so he left and went to a local McDonald's restaurant, where he panhandled for money.  Then, Appenzeller purchased a screwdriver for the purpose of breaking into residences. Wheeler indicated that Appenzeller told him he had committed 30-40 burglaries along Mentor Avenue near the Great Lakes Mall.  Appenzeller told Wheeler that he committed the burglaries during the day, when people were not home, and that he primarily stole change and money so he could remove the items without being noticed.  Further, Wheeler testified that Appenzeller told him he stayed at the Towne Motel, that he paid for his room by breaking into residences, and that he would leave his belongings with the person at the front desk of the Towne Motel.  Appenzeller told Wheeler that he used Laketran as transportation to and from the burglaries.  He told Wheeler that he placed the stolen items in a black bag.

{¶ 15} Appenzeller was indicted on a total of 18 counts, including six counts of burglary, in violation of R.C. 2911.12(A)(2) and second-degree felonies; six counts of burglary in violation of R.C. 2911.12(A)(3) and third-degree felonies; two counts of theft, in violation of R.C. 2913.02(A)(1) and fifth-degree felonies; two counts of attempted burglary, in violation of R.C. 2923.02 and third-degree felonies; and two counts of attempted burglary in violation of R.C. 2923.02 and fourth-degree felonies.  Counts one (second-degree burglary) and two (third-degree burglary) related to the incident at Mackainch's residence; counts three (second-degree burglary), four (third-degree burglary), and five (theft) related to the incident at Swaine's residence; counts six (second-degree burglary), seven (third-degree burglary), and eight (theft) related to the incident at Casselman's residence; counts nine (second-degree burglary) and ten (third-degree burglary) related to the incident at Schubert's residence; counts 11 (second-degree burglary) and 12 (third-degree burglary) related to the incident at Hess's residence; counts 13 (second-degree burglary) and 14 (third-degree burglary) related to the incident at Zeiger's residence; counts 15 (third-degree attempted burglary) and 16 (fourth-degree attempted burglary) related to the incident at Wilson's residence; counts 17 (third-degree attempted burglary) and 18 (fourth-degree attempted burglary) related to the incident at Wolf's residence.

{¶ 16} Appenzeller pled not guilty to the charges against him.

4

{¶ 17} On Monday, September 18, 2006, Appenzeller filed a motion for leave to file a motion for relief from prejudicial joinder, which was granted by the trial court.  On Friday, September 22, 2006, Appenzeller filed a motion for relief from prejudicial joinder.  Appenzeller's one-page motion asserted that the charges should be separated into four separate trials, with counts one and two, counts three through eight, counts nine and ten, and counts 11 through 18 tried together.  This motion summarily cited to Crim.R. 14 and asserted that Appenzeller would be prejudiced by all the counts being tried together, but it did not contain any case law or other legal arguments in support.  The state did not file a response to this motion. On Monday, September 25, 2006, the matter proceeded to a jury trial.  The record reflects that the trial court overruled Appenzeller's motion to bifurcate that day.  However, the transcript submitted to this court does not contain any discussion between counsel and the trial court regarding this motion.

{¶ 18} At the close of the first day of trial, Appenzeller made an oral motion to represent himself.  The trial court denied this motion as untimely.  Following the state's case-in-chief, Appenzeller moved for acquittal pursuant to Crim.R. 29.  The trial court denied this motion.  The jury found Appenzeller guilty on all 18 counts.

{¶ 19} After he was convicted, Appenzeller filed a motion for a new trial, which the trial court denied.

*State v. Appenzeller*, 2008 WL 5451425, *1-*4 (Ohio App. Dec. 31, 2008).  The trial court sentenced Appenzeller to a combined sentence of 28 years.

Appenzeller timely appealed his conviction and sentence.  Appenzeller raised five assignments of error in his appeal:

Assignment of Error No. I:  The Appellant's conviction for counts 1 through 2 and counts 6 through 18 was not supported by sufficient evidence.

Assignment of Error No. II:  The trial court erred, to the prejudice of the appellant, by permitting Shawn Hart to identify the appellant as the individual this witness had seen committing a burglary over the objection of the appellant's counsel.

Assignment of Error No. III:  The trial court erred, to the prejudice of th[e] appellant, by denying the Appellant the right to represent himself, *pro se.*

Assignment of Error No. IV:  The appellant's conviction for counts 1 through 18 is against the manifest weight of the evidence.

Assignment of Error No. V:  The trial court erred, to the prejudice of the appellant, by failing to grant the appellant's motion for relief from the prejudicial joinder.

Before the court could rule on his appeal, Appenzeller moved to dismiss his appellate counsel and requested new counsel.  His appellate counsel moved to withdraw.  The appellate court granted the motion to withdraw, appointed new counsel, and permitted new appellate counsel to file a supplementary brief.  The supplementary brief contained the following additional assignments of error:

Assignment of Error No. 1:  The trial court violated R.C. 2941.25(A) and Mr. Appenzeller's rights under the Double Jeopardy Clause by imposing multiple convictions and punishment for allied offenses.  Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution; R.C. 2941.25.

Assignment of Error No. 2:  The trial court violated Mr. Appenzeller's due process rights by imposing non-minimum and consecutive sentences.  Due Process Clause of the Fifth Amendment and the Sixth Amendment of the United States Constitution; Fifth, Sixth, and Fourteenth Amendments to the United States Constitution; *Blakely v. Washington* (2004), 542 U.S. 296; *United States v. Booker* (2005), 543 U.S. 220; *Cunningham v. California* (2007), __U.S.__, 127 S.Ct. 856.

Assignment of Error No. 3:  The trial court violated Mr. Appenzeller's due process rights by imposing non-minimum and consecutive sentences in violation of the Due Process and Ex Post Facto Clauses of the United States Constitution; *Blakely v. Washington* (2004), 542 U.S. 296; *United States v. Booker* (2005), 543 U.S. 220.

Assignment of Error No. 4:  Trial counsel provided constitutionally ineffective assistance of counsel for failing to object to the imposition of unconstitutional sentences.  Fifth, Sixth, and Fourteenth Amendments to the United States Constitution; Blakely v. Washington (2004), 542 U.S. 296; United States v. Booker (2005), 543 U.S. 220; Cunningham v. California (2007), __U.S.__, 127 S.Ct. 856; Roe b. Flores-Ortega (2000), 528 U.S. 470, Strickland v. Washington (1984), 466 U.S. 668, Sixth and Fourteenth Amendments to the United States Constitution.

Assignment of Error No. 5:  The trial court violated Mr. Appenzeller's due process rights by imposing consecutive sentences without authority.  Fifth and Fourteenth Amendments to the United States Constitution, T.p. of Sentencing Hearing at 10-

6

11.[1]

On December 31, 2008, the state appellate court affirmed the trial court in part and reversed it in part, and remanded the case for the merging of certain offenses and resentencing.

On July 30, 2007, Appenzeller filed in the trial court, *pro se* and pursuant to Ohio Rev. Code § 2953.21, a petition to vacate or set aside judgment or sentence.  The petition alleged that the State hid, altered, or destroyed evidence and that trial counsel had been ineffective.  Appenzeller also filed a motion for summary judgment, arguing that state had lacked probable cause to arrest him.  The trial court denied these motions as barred by *res judicata*, finding that Appenzeller had failed to demonstrate that the claims he asserted could not have been raised on direct appeal and failed to present evidence *dehors* the record to support his motions.  The trial court also denied Appenzeller's subsequent motions to reconsider.

Appenzeller timely appealed the trial court's denial of his petition for post-conviction relief.  He asserted two assignments of error on appeal:

> Assignment of Error No. 1: The Trial court erred, to the prejudice of the Appellant, in denying Appellant's Petition for Post Conviction Relief without an evidentiary hearing.

> Assignment of Error No. 2: The Trial Court erred, to the prejudice of the Appellant, by denying Appellant's Motion for Summary Judgment presumably, "on the basis of res judicata," without more[.]

On December 31, 2008, the state appellate court affirmed the judgment of the trial court, and it overruled Appenzeller's motion to reconsider.

---

[1]  Appenzeller subsequently filed a letter he had sent to the court reporter alleging that the transcripts were not accurate or complete.

7

Appenzeller timely filed a notice of appeal in the Ohio Supreme Court.  In his memorandum in support of jurisdiction, Appenzeller argued a single proposition of law: "Appeals Court substituted its own judgment on review, denying appellant right of due process and equal protection of laws" (capitalization altered from original).  The Ohio Supreme Court dismissed the appeal as not involving any substantial constitutional question and denied Appenzeller's subsequent motion to reconsider.

On January 28, 2009, the trial court on remand held an evidentiary hearing and resentenced Appenzeller as instructed by the state appellate court.  The trial court again sentenced Appenzeller to a combined sentence of 28 years.

Appenzeller timely filed a notice of appeal.  He asserted three assignments of error on appeal:

Assignment of Error I:

> The trial court violated Mr. Appenzeller's due process rights by imposing non-minimum and consecutive sentences. Due Process Clause of the Fifth Amendment and the Sixth Amendment of the United States Constitution; Fifth, Sixth, and Fourteenth Amendments to the United States Constitution; *Blakely v. Washington*  (2004, 542 U.S. 298; *United States v. Booker* (2005), 543 U.S. 220; *Cunningham v. California* (2007), ___U.S.___, 127 S.Ct. 856.

Assignment of Error II:

> The trial court violated Mr. Appenzeller's due process rights by imposing non-minimum and consecutive sentences in violation of the Due Process and Ex Post Facto Clauses of the United States Constitution, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution;  *Blakely v. Washington*, (2004), 542 U.S. 296; *United States v. Booker*, (2005), 543 U.S. 220.

Assignment of Error III:

> The trial court violated Mr. Appenzeller's due process rights by imposing consecutive sentences without authority. Fifth and Fourteenth

8

Amendments to the United States Constitution.

On December 7, 2009, the Court of Appeals affirmed the judgment of the trial court. The state appellate court overruled Appenzeller's subsequent petition to reopen his appeal as both untimely and without merit.[2]  Appenzeller did not appeal these rulings to the Ohio Supreme Court.

On October 29, 2009, Appenzeller filed in the trial court a motion to correct the trial record.  The trial court denied this motion as untimely.  Appenzeller did not appeal this denial to the state appellate court or the Ohio Supreme Court.

Appenzeller filed his petition for a federal writ of habeas corpus on January 4, 2010.  Appenzeller asserts four grounds for relief:

Ground one:  Affirmative government interference in the representation process denied petitioner of his fundamental right, and guarantees to a fair trial.

Ground two:  Affirmative government misconduct in the prosecution process against petitioner violated the Constitution and or laws intentionally of the United States to "railroad" him.

Ground three:  Convictions obtained against petitioner by trying petitioner/ defendant for crime(s) he was not informed of nor under indictment for.

Ground four:  Affirmative government interference in the representation process denied petitioner his State's statutory right of direct appeal of the judgments of the convictions.

Respondent filed an Answer/Return of Writ on June 11, 2010.  Doc. No. 10.

Appenzeller filed a Traverse on July 19, 2010.  Doc. No. 11.  Thus, the petition is ready for decision.

---

[2]  Appenzeller filed his petition pursuant to Ohio App. R. 26(A).  The appellate court construed the petition as filed pursuant to Ohio App. R. 26(B).

II

*A.  Jurisdiction*

The Court of Common Pleas of Lake County, Ohio sentenced Appenzeller.

Appenzeller filed his writ of habeas corpus in the Northern District of Ohio and raises

claims regarding the constitutionality of his incarceration under 28 U.S.C. § 2254.

> Writs of habeas corpus may be granted by the Supreme Court, any justice
> thereof, the district courts and any circuit judge within their respective
> jurisdictions. . . . Where an application for a writ of habeas corpus is made by a
> person in custody under the judgment and sentence of a State court of a State
> which contains two or more Federal judicial districts, the application may be filed
> in the district court for the district wherein such person is in custody or in the
> district court for the district within which the State court was held which convicted
> and sentenced him and each of such district courts shall have concurrent
> jurisdiction to entertain the application.

28 U.S.C. § 2241(a ) & (d).  Lake County is within this court's geographic jurisdiction.

This court has jurisdiction over Appenzeller' petition.

*B.    Evidentiary hearing*

The habeas corpus statute authorizes an evidentiary hearing in limited

circumstances when the factual basis of a claim has not been adequately developed in

state court proceedings.  28 U.S.C. § 2254(e)(2).  There is no need for an evidentiary

hearing in the instant case.  All of Appenzeller's claims involve legal issues which can

be independently resolved without additional factual inquiry.

*C.    Exhaustion of state remedies*

A state prisoner must exhaust all available state remedies or have no remaining

state remedies available prior to seeking review of a conviction via federal habeas

corpus.  28 U.S.C. § 2254(b) and (c); *Castillo v. Peoples*, 489 U.S. 346, 349 (1989);

*Riggins v. Macklin*, 936 F.2d 790, 793 (6th Cir. 1991).  If any state procedures for relief

10

remain available, the petitioner has not exhausted state remedies.  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

A petitioner must fairly present any claims to the state courts in a constitutional context properly to exhaust state remedies.  *Anderson v. Harless*, 489 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989).  "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied."  *Picard*, 404 U.S. at 275; *see also Harris v. Reeves*, 794 F.2d 1168. 1174 (6th Cir. 1986).  The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims.  *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

The requirement that petitioners exhaust state remedies is a matter of comity between the federal government and the states:

> The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. . . . Because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter."

*Rose v. Lundy*, 455 U.S. 509, 518 (1982) (quoting *Darr v. Burford*, 339 U.S. 200, 204 (1950)) (other citations omitted).  Because exhaustion is a matter of comity, a petition containing unexhausted claims may be denied on the merits.  28 U.S.C. § 2254(b)(2).

Appenzeller has no state remedies available for his claims.  Because no state remedies remain available to him, Appenzeller has exhausted state remedies.

11

D.    *Procedural default*

Reasons of federalism and comity generally bar federal habeas corpus review of

"contentions of federal law . . .  not resolved on the merits in the state proceeding due to

respondent's failure to raise them there as required by state procedure."  *Wainwright v.*

*Sykes*, 433 U.S. 72, 87 (1977).  When a petitioner

> has defaulted his federal claims in state court pursuant to an independent and
> adequate state procedural rule, federal habeas review of the claims is barred
> unless the prisoner can demonstrate cause for the default and actual prejudice
> as a result of the alleged violation of federal law, or demonstrate that failure to
> consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Procedural default occurs when a

petitioner fails to present fairly to the highest state court his claims in a federal

constitutional context.  *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Anderson v.*

*Harless*,  459 U.S. 4 (1982).

If the state argues that a petitioner has procedurally defaulted his claims, the

court must conduct a four-step analysis to determine whether the petitioner has indeed

defaulted and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is
> applicable to the petitioner's claim and that the petitioner failed to comply with the
> rule. . . . Second, the court must decide whether the state courts actually
> enforced the state procedural sanction.  . . . Third, the court must decide whether
> the state procedural forfeiture is an  "adequate and independent" state ground on
> which the state can rely to foreclose review of a federal constitutional claim. . . .
> This question generally will involve an examination of the legitimate state
> interests behind the procedural rule in light of the federal interest in considering
> federal claims. . . . [Fourth, if] the court determines that a state procedural rule
> was not complied with and that the rule was an adequate and independent state
> ground, then the petitioner must demonstrate . . . that there was "cause" for him
> to not follow the procedural rule and that he was actually prejudiced by the
> alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  A default will also be excused if

12

petitioner demonstrates that not excusing the default "will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

Respondent contends that Appenzeller has defaulted his fourth ground for relief, his contention that government interference with his representation by counsel denied him his statutory right pursuant to Ohio law to a direct appeal. Appenzeller argues in his fourth ground for relief as follows:

> Ground four: Affirmative government interference in the representation process denied petitioner his State's statutory right of direct appeal of the judgments of the convictions.
> 1.  Appellate counsel was appointed & different from trial counsel.
> 2.  Petitioner swears herein, and did to the appellate court, that the trial court transcripts put forth by appellate counsel are untrue, inaccurate, incomplete and do not represent impartially what occurred in the trial court, nor did appellate counsel's brief in connection.
> 3.  Petitioner complained to counsel and the court.
> 4.  The court approved counsel's withdrawal (twice!) but subsequently limited consecutive counsel's representation.

This ground for relief addresses the performance and replacement of appellate counsel. Appellate counsel moved to withdraw, and Appenzeller also moved to remove his court-appointed counsel and replace him with new counsel. The appellate court granted counsel's motion to withdraw, appointed new counsel, and dismissed Appenzeller's motion to remove counsel as moot. Appenzeller also moved to strike the appellate brief filed by his first counsel. The court granted that motion "to the extent that newly appointed counsel is granted leave to file a supplemental brief for appellant . . . ." Judgment Entry, Case No. 2005-L-258 (Ohio 11th Dist. Ct. Sept. 7, 2007), Petition, Exh. D.

In Appenzeller's memorandum in support of jurisdiction to the Ohio Supreme Court, he complained of the appellate court's substitution of its own versions of claims in

13

place of the claims Appenzeller raised on appeal and of using *res judicata* to bar Appenzeller's claims on appeal.  He also complained that the trial court acquiesced in the use of fraudulent trial transcripts and made faulty rulings and that his trial was rendered unfair by prosecutorial misconduct and the ineffective assistance of defense counsel.

Appenzeller's fourth ground for relief before this court raises different issues.  It alleges constitutional violations arising from the appointment and replacement of appellate counsel, appellate counsel's and the *appellate* court's wrongly crediting false trial transcripts, and the appellate court's limiting new appellate counsel's representation to filing a supplementary appellate brief.  These claims were not fairly presented to the Ohio Supreme Court.  As they were not fairly presented to the highest court in the state and there is no mechanism by which they may properly be raised now, these claims were procedurally defaulted.[3]

For the reasons given above, Appenzeller's fourth ground for relief should be dismissed as procedurally defaulted.

### III.

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a

---

[3]  To the extent that Appenzeller's fourth ground for relief can be read as asserting an independent due process claim that the trial transcripts were faulty, Appenzeller does not cite and the record does not contain any relevant evidence to support such a claim beyond Appenzeller's self-serving affidavit.  This falls far short of the clear and convincing evidence required of habeas petitioners to overcome the presumption of correctness accorded facts found or accepted by state courts. 28 U.S.C. § 2254(e)(1).  Consequently, any such claim must be dismissed as without merit.

writ of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the current deferential standard of review, a writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence.  *Carey v. Musladin*, 549 U.S. ___, 127 S. Ct. 649, 653 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000).  Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction.  *Carey*, 127 S. Ct., at 653.  "[A] determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).  The petitioner, however, may rebut "the presumption of correctness by clear and convincing evidence." *Id.*

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court.  Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court).  A decision is

15

"contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result.  *Id.* at 405-06.  "A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases."  *Id.* at 405.  A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand.  *Doan v. Brigano,* 237 F.3d 722, 729-31 (6th Cir. 2001).  The court will examine Appenzeller's remaining grounds for relief using the deferential standard applied to state court rulings on the petitioner's claims.

A.      *Ground one:  Government interference in the representation process denied petitioner his right to a fair trial*

Appenzeller's first ground of relief argues that the state interfered with his legal representation, thus denying him a fair trial.  He alleges the following facts in support of his claim:

1.      Petitioner is and was indigent, and in Ohio state custody, when counsel was appointed, 5/26/06, and trial scheduled Sept. 25-27, 2006.
2.      Notice of discovery by State of Ohio was finally given to the defense 9/21/06 & trial began as scheduled.
3.      No evidentiary issues, or the "duplicitous" counts against petitioner in the secret indictment, were ever even remotely resolved or raised or defined in advance of the trial proceeding commencing 9/25/06.
4.      Upon its own discretion, the trial court ordered another advocate begin representing petitioner for the last day of trial, 9/27/06 and at sentencing, Oct. 31, 2006!

(Punctuation and underlining in the original.)

Appenzeller was represented by a total of four attorneys at trial.  His first two

16

attorneys withdrew from representation, the first because Appenzeller had filed a grievance against him in another court and the second because the attorney represented a potential witness in Appenzeller's case.  Appenzeller's third attorney, Michael Judy ("Judy"), moved to withdraw because Appenzeller threatened to kill him and members of his family.  *See* Transcript of Proceedings ("Tr."), Answer, v. II, pp. 237-42.  The court refused to let Appenzeller represent himself because the request was made during trial without prior notice and because the court found that Appenzeller was not emotionally competent to represent himself.[4]  Tr., v. II at 237-38, 246-47.  Instead, the court appointed Paul Miller ("Miller") to assist Judy with Appenzeller's remaining defense.

On direct appeal, Appenzeller argued that the trial court erred in denying Appenzeller the right to represent himself.  In overruling that assignment of error, the state appellate court wrote the following:

> {¶ 52} "It is well settled that a defendant in a state criminal trial has a constitutional right of self representation, and may proceed to defend himself without counsel when he voluntarily and intelligently elects to do so."  *State v. McKinney,* 11th Dist. No.2007-T-0004, 2008-Ohio-3256, at ¶ 211, citing *Faretta v. California* (1975), 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562.  The Supreme Court of Ohio has held that "if a trial court denies the right of self-representation when properly invoked, the denial is per se reversible error."  *State v. Vrabel,* 99 Ohio St.3d 184, 790 N.E.2d 303, 2003-Ohio-3193, at ¶ 49, citing *State v. Reed* (1996), 74 Ohio St.3d 534, 535, 660 N.E.2d 456, citing *McKaskle v. Wiggins* (1984), 465 U.S. 168, 177, 104 S.Ct. 944, 79 L.Ed.2d 122.

> [A] defendant's request for self-representation must be made timely.  *State v. Cassano,* 96 Ohio St.3d 94, 772 N.E.2d 81, 2002-Ohio-3751, at ¶ 40.  (Citations omitted.)  In this matter, Appenzeller did not request to represent himself until the conclusion of the first day of trial.  By that time, the vast majority of the witnesses

---

[4]  The trial court based this finding on Appenzeller's disruption of the courtroom on the first day of trial.  *See, e.g.,* Tr. at I, 208-09, 212.

had testified.  In *State v. Cassano,* the Supreme Court of Ohio held that a motion for self-representation made only three days prior to the start of trial was not timely.  *Id.*  In *State v. Deir,* this court held that a defendant's motion to represent himself was not timely when it was made only one business day before the start of trial.  *State v. Deir,* 11th Dist. No.2005-L-117, 2006-Ohio-6885, at ¶ 35. Finally, in *State v. McKinney,* this court held that the trial court did not err in denying a motion for self-representation that was made during the course of a jury trial.  *State v. McKinney,* 2008-Ohio-3256, at ¶ 214.  Since Appenzeller's request for self-representation was not made until after his jury trial had begun, it was untimely.  Therefore, the trial court did not err by denying his oral motion for self-representation.

*Appenzeller*, 2008 WL 5451425 at *7.

Appenzeller cites no holdings of the Supreme Court or any federal or state cases resolving similar issues on the basis of Supreme Court decisions in support of his assertion that his trial was in any respect constitutionally unfair.  He does not explain how the trial court's decisions with respect to his legal representation violated his right to a fair trial, nor does he explain in what respect the counts against him were "duplicitous."  To the extent that Appenzeller's accounts of events differ from the accounts given in the judicial opinions, transcripts, and other documents in the record, Appenzeller fails to show by clear and convincing evidence that the official accounts are incorrect.  In sum, Appenzeller fails to demonstrate that his conviction was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or resulted in a decision based on an unreasonable determination of the facts in light of the evidence.

Appenzeller has not demonstrated that the trial court violated his constitutional right to an attorney or his right to a fair trial.  For these reasons, Appenzeller's first ground for relief should be dismissed.

C.      *Ground two:  Government misconduct intentionally violated the Constitution and*

18

*laws of the United States to "railroad" Appenzeller*

Appenzeller contends in his second ground for relief that the government unconstitutionally and intentionally violated the law in an attempt to "railroad" him.  The court construes this contention as an argument that government misconduct deprived Appenzeller of his fifth and Fourteenth Amendment right to due process by rendering his conviction fundamentally unfair.  In support of his second ground for relief, Appenzeller recites the following facts:

1.  The prosecution used "tactically" (<u>with doubt, defense counsel's "help"</u>):
2.  a <u>secret</u> indictment/<u>preindictment delay</u>; competency testing; a tardily forwarded, "Notice of Discovery," encompassing a weekend, 4 days before trial; tampering of records; tampering of evidence; suppressing evidence favorable to defense; prejudice to defendant's appearance and intellect with the jury; and perjury at trial by the state's lead detective, Sgt. Gunsch, to ascribe a statement to defendant <u>never made by defendant</u> (Exhibit "B", attached hereto)!!  WHY?  To get a conviction and obscure/conceal the "duping" of a county Grand Jury and malicious (without probably cause) prosecution of petitioner/defendant . . . The trial was a sham! (so too the direct appeal).

(Punctuation and underlining in the original.)

Respondent answers that the bulk of Appenzeller's factual allegations and legal conclusions have no basis in the record.  Specifically, respondent asserts that there is no basis in the record to support any suggestion that Appenzeller's defense counsel colluded with the government to issue a secret indictment or manufacture "preindictment delay"; that any "competence testing" was improper or prejudicial; that notice of discovery was sent only four days before trial; that the government tampered with or suppressed evidence; that the government improperly used references to Appenzeller's appearance or intellect to his prejudice; that the lead detective perjured

himself at trial;[5] that the government duped the grand jury; that the prosecution of Appenzeller was for a malicious purpose; or that the trial was a sham.

The right to a fair trial is a right implicit in the due process clauses of the Fifth and Fourteenth Amendments. *See United States v. Agurs*, 427 U.S. 97, 107 (1976). The analysis of alleged violations of the right is identical under either amendment. *Id.* "A fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136 (1955). "[A] fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding." *Strickland v. Washington*, 466 U.S. 668, 684 (1984). "Every procedure which would offer a possible temptation to the average man as a judge . . . not to hold the balance nice, clear, and true between the State and the accused denies the latter due process of law." *Murchison*, 349 U.S. at 136 (quoting *Tumey v. State of Ohio*, 273 U.S. 510, 532 (1927)).

Not all violations of the right to a fair trial, however, entitle a petitioner to habeas relief. In *Brecht v. Abrahamson,* 507 U.S. 619 (1993), the Supreme Court held that a court considering a collateral review of a conviction should weigh constitutional "trial error"[6] by (1) evaluating the error in the context of the entire record; (2) asking whether

---

[5]  Exhibit B cited in the supporting facts consists of a Mentor Police Department Miranda rights form with the notation "refused" on it.

[6]  According to the Supreme Court,

[t]rial error "occur[s] during the presentation of the case to the jury," and is amenable to harmless-error analysis because it "may . . . be quantitatively assessed in the context of other evidence presented in order to determine [the effect it had on the trial]." *Id.,* at 307-308.  At the other end of the spectrum of constitutional errors lie "structural defects in the constitution of the trial mechanism, which defy analysis by

the trial error had a substantial and injurious effect on the jury's verdict, and (3) granting relief only if there is grave doubt about whether the error was harmless.  *id.* at 638.  A court may not grant habeas relief unless it believes that the error had a substantial and injurious effect on the jury's verdict.  *Kyles v. Whitley*, 514 U.S. 419, 436 (1995).

As this court has already noted, to the extent that Appenzeller's accounts of events differ from the accounts given in the judicial opinions, transcripts, and other documents in the record, Appenzeller fails to show by clear and convincing evidence that the official accounts are incorrect.  Appenzeller also asserts allegations that, while not contradicted by the record, are also not substantiated by any evidentiary support.  Consequently, this court cannot credit his allegations that the prosecution and his counsel colluded to convict him or that the government intentionally employed pre-indictment delay, engaged in competency testing, issued a tardy "notice of discovery," tampered with records, tampered with evidence, suppressed evidence favorable to the defense, duped a grand jury, prosecuted him maliciously and without probable cause, and suborned perjury to convict him.  Appenzeller not only fails to provide evidence to support these allegations, but, in most cases, he fails to provide any details to explain the allegations.  The court cannot base habeas relief on unsupported and conclusory allegations.

-----------------------

'harmless-error' standards."  *Id.,* at 309. The existence of such defects--deprivation of the right to counsel, for example--requires automatic reversal of the conviction because they infect the entire trial process.  See *id.,* at 309-310.  Since our landmark decision in *Chapman v. California,* 386 U.S. 18 (1967), we have applied the harmless-beyond-a-reasonable-doubt standard in reviewing claims of constitutional error of the trial type.

*Brecht*, 507 U.S. at 629-30.

Appenzeller does not explain his allegation that the prosecution used a "secret" indictment.  If by this he means that the grand jury proceedings by which the indictment was obtained were secret, this is not a violation of due process:  Grand jury proceedings are traditionally secret as a matter of course.  In Ohio, an accused is not entitled to see grand jury transcripts unless justice requires it and the accused shows that he has "a particularized need for disclosure exists which outweighs the need for secrecy."  *State v. Benge*, 75 Ohio St. 3d 136, 145, 661 N.E.2d 1019 (1996).  This does not violate due process.  Before a federal court can find that an indictment undermined the fairness of the ensuing trial, the defendant must demonstrate significant and long-standing or common misconduct during indictments.  *See United States v. Azad,* 809 F.2d 291, 294 (6th Cir.1986).  Moreover, the validity of an indictment is not affected by the character of the evidence considered, and incidents before the grand jury do not affect the fairness of the following trial.  *See United States v. Calandra*, 414 U.S. 338, 344-45 (1974); and *United States v. Collins*, 1991 WL 23558, at *6 (6th Cir.  Feb.26, 1991).  Consequently, Appenzeller's unexplained allegation of a "secret" indictment, without more, fails to state a claim upon which relief may be granted.

Appenzeller does not explain his allegations that there was "prejudice to defendant's appearance and intellect with the jury" and that Gunsch committed perjury at trial.  Respondent cites the opinion of the state appellate court on Appenzeller's appeal of the denial of his petition for post-conviction relief as possibly clarifying these allegations.  The state appellate court wrote as follows:

{¶ 24} Appenzeller argues that the assistant prosecutor intentionally mentioned a limp he had during trial. At trial, the following colloquy occurred:

22

{¶ 25} "Q. And you'd seen [Appenzeller] throughout the course of this case and he seems to be walking with a noticeable limp, have you noticed that?

{¶ 26} "A. [Sergeant Ken Gunsch] I have noticed.

{¶ 27} "[Defense counsel]: Objection. Approach?

{¶ 28} "THE COURT: Overruled.

{¶ 29} "Q. You have?

{¶ 30} "A. I have noticed a limp here.

{¶ 31} "Q. Okay. When you saw him back in May of 2005, was there anything wrong, any limp, anything of that nature?

{¶ 32} "A. No limp at all."

*       *       *       *       *

{¶ 34} In his affidavit, Appenzeller states that this limp was caused by a full-leg, security brace that he was forced to wear by the Lake County Sheriff's Office. If true, the assistant prosecutor should not have commented upon Appenzeller's required use of this security device. However, Appenzeller has not demonstrated that he was denied a fair trial by this comment. While Appenzeller states the security brace gave him a noticeable limp, he makes no assertion that the jury was able to see the brace itself. Appenzeller argues that the questioning created the inference that he was faking an injury. However, there is an equal inference that he actually had an injury.

{¶ 35} We do not believe that the assistant prosecutor's inappropriate reference to Appenzeller's brace denied Appenzeller a fair trial.

{¶ 36} Appenzeller claims that Sergeant Ken Gunsch's affidavit submitted to demonstrate probable cause for an arrest warrant "contained no truths." Appenzeller argues that "[n]o one was 'seen exiting' an apartment, no one declared the apartment had been burglarized, no one 'picked' appellant from a photo line up * * *." The probable cause affidavit was presumably referring to Shawn Hart, who testified at trial that he saw an individual leave Lauri Casselman's apartment and that he later identified the person as Appenzeller when he was presented with a police line-up. Accordingly, Sergeant Gunsch's affidavit was confirmed by the evidence presented at trial. Thus, while Appenzeller argues in his reply brief that this affidavit "was a lie in its entirety," he has not demonstrated this assertion.

*State v. Appenzeller*, 2008 WL 5428256, at *3-*5 (Ohio App. Dec. 31, 2008).

23

While the opinion of the appellate court sheds some light on what Appenzeller may have meant by "prejudice to defendant's appearance and intellect with the jury," that opinion does not clarify the allegation that Gunsch committed perjury at trial by ascribing to Appenzeller things that Appenzeller did not say.  The appellate court's opinion refers to Gunsch's testimony by way of affidavit, not trial testimony, and the affidavit does not relate to anything Appenzeller may have said.  As Appenzeller fails to explain what he means by his allegation that Gunsch perjured himself at trial, much less supply support for that assertion and demonstrate that it is a ground for habeas relief, this allegation should be dismissed because petitioner has failed to carry his burden of proof.

The allegation that the reference at trial to Appenzeller's limp prejudiced the jury against Appenzeller, thus denying him a fair trial, must contend with the state appellate court's opinion to the contrary.  The state appellate court found as a matter of fact that although Appenzeller argued the reference created the inference that he was faking an injury, there was an equally plausible inference that he actually had an injury.  Appenzeller has done nothing to show by clear and convincing evidence that this finding of fact by the state court was erroneous.  The state appellate court also reached the legal conclusion that this reference did not deny Appenzeller a fair trial.  Appenzeller has not cited a holding of the Supreme Court demonstrating that this was an unreasonable application of clearly established Federal law on similar facts.  Appenzeller has not, therefore, met his burden of proof with regard to this issue.

For these reasons, Appenzeller's second ground for relief should be dismissed as without merit.

24

C.     Ground three: Convictions obtained against petitioner by trying petitioner/defendant for crimes he was not informed of nor under indictment for.

Appenzeller argues in his third ground for relief that he was convicted of crimes of which he was he was not informed or indicted.  In support of this contention, he alleges the following facts:

1.    <u>Defense counsel</u> lied to the trial court, and then "stipulated" to property belonging to defendant with no knowledge of the property actually belonging to defendant!  (Exhibit "C," attached hereto).
2.    The state--never divulging where the property came from or how they obtained it--alleged it belonged to defendant and defendant successfully used the property to commit, conceal, and complete the crimes indicted for.
3.    The state, at trial, used photographs <u>and lab expert</u> to allege "possession of criminal tools" against defendant.

(Underlining in original; punctuation altered from original.)  Exhibit C is a motion *in limine* seeking to bar from trial evidence related to an incident in Willowick.  The defense motion argues that such evidence is irrelevant to the upcoming trial because "his actions in that incident do not form the basis of any of the counts of the indictment in this case; and the Willowick incident happened on a day different from the days on which Mr. Appenzeller is alleged to have committed the offenses charged in the indictment."  Motion *in Limine*, Petition, Exh. C.

It is not immediately apparent to what evidence Appenzeller is referring in this ground for relief or what constitutional violation he is alleging.  If he is alleging that he was convicted of crimes for which he was not indicted, that is simply wrong.  Appenzeller was indicted on 18 counts:   six counts of burglary in violation of Ohio Rev. Code § 2911.12(A)(2), six counts of burglary in violation of Ohio Rev. Code § 2911.12(A)(3), two counts of theft, two counts of attempted burglary in violation of Ohio Rev. Code § 2923.02, and two counts of attempted burglary in violation of Ohio Rev. Code § 2923.02.  He was

25

convicted on each of these counts.  None of these counts was related to events in Willowick.

Respondent looks to Appenzeller's petition for post-conviction relief to determine to what Appenzeller is referring in his third ground for relief.  Appenzeller appended to that petition notes made by Sgt. Gunsch after speaking to Det. Bob Prochaska of the Willowick Police Department.  Post Conviction Petition, Answer, Exh. 29, Mentor Police Department Case Narrative, Exh. M.  The notes state that Appenzeller was arrested in Willowick on February 25, 2005 on charges of trespassing and receiving stolen property.  When arrested, he had in his possession a black gym back containing, among other things, $3,250.00 in antique coins later reported missing by a resident of Willowick.  In his petition for post-conviction relief, Appenzeller argued that he was denied effective assistance of counsel when counsel "treacherously" stipulated to Appenzeller's ownership of the gym bag and a screwdriver related to the Willowick incident and failed to investigate how the police had obtained these items.

The standard for determining whether petitioner's counsel was ineffective is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see also Groseclose v. Bell*, 130 F.3d 1161, 1167 (6th Cir. 1997). A claim of ineffective assistance of counsel has two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a

26

breakdown in the adversary process that renders the result unreliable. *Strickland*, 466 U.S. at 687; *see also Groseclose*, 130 F.3d at 1167.

The first prong of this test, the showing of deficient performance, is an objective one: "[T]he proper standard for attorney performance is that of reasonably effective assistance. . . . When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness," as judged by "prevailing professional norms." *Strickland*, 466 U.S. 687-88; *see also Groseclose*, 130 F.3d at 1167. Scrutiny of counsel's performance is highly deferential to avoid second-guessing an adverse decision. *Strickland*, 466 U.S. at 689; *see also Groseclose*, 130 F.3d at 1167. The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Groseclose*, 130 F.3d at 1167. A court reviewing counsel's performance "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ." *Id.* at 690-91 (1984); *see also Groseclose*, 130 F.3d at 1167-6.

The second prong of the test for ineffective assistance of counsel is whether the error prejudiced petitioner:

> An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be

prejudicial to the defense in order to constitute ineffective assistance under the Constitution.

*Strickland*, 466 U.S. at 690-91 (citations omitted); *see also Groseclose*, 130 F.3d at 1168. Further "the burden rests on the accused to demonstrate a constitutional violation." *United States v. Cronic*, 466 U.S. 648, 658 (1984).  Showing a constitutional violation requires showing that "counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Nix v. Whiteside*, 475 U.S. 157, 175 (1986).  "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).  A reviewing court must ask itself "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695; *see also Groseclose*, 130 F.3d at 1168.

Determining whether counsel was ineffective is a mixed question of law and fact. *See Williams v. Taylor*, 529 U.S. 362 (2000).  When a federal court reviews the conclusions of a state court regarding counsel's alleged ineffectiveness, both the legal and the factual tests for determining whether habeas relief is warranted are brought into play.  *Id.* at 395-96.  That is, the reviewing court must determine whether the decision of the state court regarding counsel's alleged ineffectiveness (1) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding and (2) resulted in a decision that was contrary to or involved an unreasonable application of a holding of the Supreme Court.  *Id.*  There are two ways in which a state court decision may involve an unreasonable application of a holding of the Supreme Court:

28

First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case.  Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Id.* at 407.

Upon appeal of the trial court's denial of his petition for post-conviction relief,

Appenzeller raised this claim in the state appellate court, which responded as follows:

{¶ 37} Appenzeller advances several claims of ineffective assistance of trial counsel.  In *State v. Bradley,* the Supreme Court of Ohio adopted the following test to determine if counsel's performance is ineffective:  "[c]ounsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance."  *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus, adopting the test set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.  Moreover, "'a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. * * * If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, * * * that course should be followed.'"  *Id.* at 143, quoting *Strickland,* 466 U.S. at 697.

*        *        *        *        *

. . . Appenzeller claims his trial counsel was ineffective for stipulating to the admission of his screwdriver and duffle bag after filing a motion in limine to exclude the admission of any evidence obtained as a result of Appenzeller's arrest in Willoughby [sic], Ohio.  The record does not indicate why trial counsel stipulated to the admission of the screwdriver and duffle bag.  Trial counsel may have concluded that the items were going to be admissible regardless and stipulated to their admission to avoid any prejudice to Appenzeller by reference to the Willoughby incident.  Thus, it appears that the decision to stipulate to the admission of these [sic] exhibits was one of trial strategy.  "The Supreme Court of Ohio has held that trial strategy decisions should not be second-guessed and that "'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'"  *State v. Ogletree,* 11th Dist. No.2005-P-0040, 2006-Ohio-6107, at ¶ 64, quoting *State v. Mason,* 82 Ohio St.3d at 157-158, 694 N.E.2d 932, quoting *Strickland,* 466 U.S. at 689.

29

{¶ 44} In his affidavit, Appenzeller makes the conclusory statement that the screwdriver and duffle bag would not have been admissible, but he has not substantiated this claim.  Therefore, he has not met his evidentiary burden on this issue. See *State v. Pierce,* 127 Ohio St.3d at 586.

*Appenzeller*, 2008 WL 5428256 AT *4-*6.  Appenzeller has not shown by clear and convincing evidence that the state appellate court relied on an unreasonable determination of the facts in light of the evidence presented or that the state appellate court reached a decision that was contrary to or involved an unreasonable application of a holding of the Supreme Court.  Rather, Appenzeller relies on conclusory statements, unsupported assertions, and unwarranted inferences in making his argument.  As Appenzeller has failed to carry his burden of proof, his third ground for relief should be dismissed as without merit.

IV.

For the reasons given above, Appenzeller's petition for habeas relief should be dismissed.  His first, second, and third grounds for relief should be dismissed as without merit, and his fourth ground for relief should be dismissed as procedurally defaulted.


Date:  December 17, 2010                         */s/ Nancy A. Vecchiarelli*
                                                United States Magistrate Judge

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**